UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| VALENTIN ORTIZ, JR., <br><br> Plaintiff, <br><br> v. <br><br> DR. PEARCY, <br><br> Defendant. | CAUSE NO. 3:19-CV-61-JD-MGG |

OPINION AND ORDER

Valentin Ortiz, Jr., proceeds against Dr. Jeffery Pearcy, D.D.S., for compensatory and punitive damages for failing to provide him with constitutionally adequate dental care while housed at Westville Correctional Facility in violation of the Eighth Amendment. ECF 5 at 5. Dr. Pearcy moved for summary judgment. ECF 35. Pursuant to N.D. Ind. L.R. 56-1(f), he provided Ortiz the Appendix C Notice, which explained (in part): "If you do not respond to the summary judgment motion, you may lose this case." ECF 37 at 1. After the response deadline, Ortiz asked for and was granted more time to respond. ECF 40. That deadline has passed with no response from him. Therefore the court will now rule on the summary judgment motion.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine

issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). "[I]nferences relying on mere speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009). Summary judgment "is the put up or shut up moment in a lawsuit . . .." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). However, when a party with personal knowledge makes specific factual assertions in its pleadings, declares under penalty of perjury that the pleading is true, and signs the pleading, the factual assertions may be weighed as evidence just as if they were contained in an affidavit. *Ford v. Wilson* 90 F.3d 245, 246-47 (7th Cir. 1996). That is the case with respect to the complaint Ortiz filed here. ECF 2 at 5. Although "it is not the court's job to scour the record in search of evidence to defeat a motion for summary judgment," *Hildreth v. Butler*, 960 F.3d 420, 429-30 (7th Cir. 2020), it will consider the allegations in the verified complaint to the extent they meet the requirements above. However, when the dates in the complaint conflict with the dates in Ortiz's dental record, submitted by Dr. Ortiz, the dental record dates will control.

At issue here is the treatment Ortiz received for tooth # 20. His dental records stretch back to 2007 and show that by the time he filed the complaint, he had lost more than half his teeth and had fillings on several of the remaining ones. Tooth # 20, in particular, was first mentioned in 2010 when Ortiz lost a filling and had a new resin

2

filling placed. ECF 12-2 at 7-8. That tooth did not have another problem until January 2018, when Dr. Pearcy restored it with amalgam after it was fractured. *Id.* at 16.

On March 15, 2018, Ortiz had another amalgam restoration on tooth # 20. ECF 12-2 at 16. Dr. Pearcy removed cavities and restored the tooth. *Id.* Dr. Pearcy noted that a different tooth needed to be extracted and an appointment to do that was scheduled for April. *Id.* Twenty minutes after the appointment, the filling came out. ECF 2 at ¶ 9. When Ortiz saw Dr. Pearcy in April for the tooth extraction, he told him about the lost filling. ECF 12-1 at ¶ 9. Dr. Pearcy told him that he would need to be scheduled for another appointment to fix it. *Id.*

Ortiz submitted a Request for Healthcare Form that was received at the dental clinic on May 11, 2018, but he was already scheduled to be seen to fix his tooth in a few days. ECF 12-1 at ¶ 10. On May 16, Dr. Pearcy filled the tooth using a resin filling instead of an amalgam. *Id.* at ¶ 11. That filling fell out at dinner. ECF 2 at ¶ 13. The dental office received Ortiz's Request for Healthcare Form about it on May 29. ECF 12-1 at ¶ 12. He was scheduled for an appointment on July 9, but he did not show up because his dorm was on lockdown. *Id.* at ¶ 13. When the clinic attempted to reschedule the appointment, they learned that Ortiz had transferred to another part of the prison and was under the care of a different dental clinic. *Id.* He was rescheduled at the new clinic but refused to attend the appointment. ECF 12-2 at 17.

Under the Eighth Amendment, inmates are entitled to constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical

3

need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). On the subjective prong, the plaintiff must establish that the defendant "acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal quotation marks, brackets, and citations omitted).

Dr. Pearcy first argues that Ortiz's medical condition—a single cavity—does not qualify as an objectively serious medical need under the Eighth Amendment. He compares Ortiz's plight with a chipped tooth that was otherwise not infected, did not cause trouble eating or sleeping, and had no accompanying swelling or uncontrolled bleeding. *See Poff v. Schettle*, No. 15-CV-954-JPS, 2017 WL 2728430 at *5 (E.D. Wis. June 23, 2017) (reviewing dental cases and finding chipped tooth was not a serious medical need). However, the medical condition here was not a single cavity. It was a lost filling. Even a layperson can appreciate the dangers inherent in a hole in a tooth, potentially exposing the inside of a tooth to food particles or bacteria:

> If a filling isn't replaced within a few days, it could cause damage to the unprotected tooth. Bacteria and food particles can stick into the empty space, causing decay. Also, the missing filling can expose dentin, the second layer of tooth under the hard outer enamel. Dentin is softer than enamel and more susceptible to decay. Exposed dentin can also be very sensitive. Further decay or

4

> damage to the tooth may require more extensive repair work, such as a crown, root canal, or extraction. That's why the sooner you can get the filling replaced, the better.

Marjorie Hecht, *What To Do If Your Filling Falls Out*, Healthline (Mar. 26, 2020), https://www.healthline.com/health/what-to-do-if-your-filling-falls-out; *cf. Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) ("Tooth decay can constitute an objectively serious medical condition because of pain and the risk of infection."). Dr. Pearcy has pointed to nothing to suggest Ortiz's tooth was not susceptible to these dangers. He has not met his burden to show the absence of a dispute on the objective prong.

Even though Dr. Pearcy has not shown the absence of a serious medical condition, there is no genuine dispute about the subjective prong. The record does not show Dr. Pearcy was deliberately indifferent to the lost filling. He twice attempted to restore the tooth. For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). Courts "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019) (quotation marks and citation omitted). Nothing here suggests that Dr. Pearcy's attempts at restoring the tooth falls below a minimally competent standard. He explains that there are several reasons why a filling could fall out, including poor oral hygiene, biting too hard on the filling, not

5

having enough remaining tooth for the bonding to adhere to, grinding one's teeth, or chewing gum. ECF 34 at 5. Even if the filling fell out because Dr. Pearcy botched the filling procedure, this would constitute negligence at most, which is not enough for deliberate indifference. *See Minix v. Canarecci*, 597 F.3d 824, 831-32 (7th Cir. 2010).

Nor does a delay in treatment provide a disputed issue of fact for trial. The March 15 filling was not addressed for two months, and the appointment to fix the May 16 filling was scheduled almost two months after it fell out. Delay in providing medical care can constitute deliberate indifference if the delay unnecessarily prolongs an inmate's suffering, *Petties v. Carter*, 836 F.3d 722, 730-31 (7th Cir. 2016) (en banc), or when "the delay (rather than the inmate's underlying condition) caused some degree of harm." *Conley v. Birch*, 796 F.3d 742, 749 (7th Cir. 2015).

In the complaint, Ortiz stated that he had "written numerous [ ] times about the fear I am experiencing and about the pain I sustain from eating regular foods; i.e. chips, crackers, ice. I experience 'white lighting pain' that is so agonizing to me physically and mentally." ECF 2 at ¶ 19. But Ortiz does not say to whom he sent these letters, and there is no indication Dr. Pearcy was aware of them or any other complaints of pain. At the April 9 appointment, the dental records mention the missing filling but there is no notation about pain. So, too, for the May 11 Healthcare Request—the dental records show that Ortiz requested an exam for the lost filling but do not mention pain. It is, therefore, undisputed that Dr. Pearcy was not aware of any pain Ortiz was experiencing.

Similarly, there is nothing in the record to support a claim that the delay in providing treatment harmed Ortiz.  "In cases where prison officials delayed rather than denied medical assistance to an inmate, courts have required the plaintiff to offer verifying medical evidence that the delay (rather than the inmate's underlying condition) caused some degree of harm. That is, a plaintiff must offer medical evidence that tends to confirm or corroborate a claim that the delay was detrimental." *Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013) (quotation marks and citation omitted). There are several harmful consequences that can happen if a filling falls out and is not fixed promptly. There is no evidence of any of that here.

For these reasons, the court:

(1) GRANTS the defendant's motion for summary judgment (ECF 35); and

(2) DIRECTS the clerk to enter judgment in favor of the defendant and to close this case.

SO ORDERED on February 22, 2021

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT